IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ERIC SCOTT G.,[1]          )
                           )
        Plaintiff,         )
                           )
v.                         )        Case No. 18-1319-JWL
                           )
ANDREW SAUL,               )
COMMISSIONER OF SOCIAL     )
SECURITY,                  )
                           )
        Defendant.         )
_____)

# MEMORANDUM AND ORDER

Plaintiff claims that he became disabled on January 1, 2014, when he was twenty-four years old. He suffers from various physical and mental ailments, including degenerative disc disease, obesity, flat-footedness, chronic insomnia and bipolar affective disorder. His past work record has been spotty, including stints as a gas station attendant, a shelf-stocker at a big-box store, and as a salesperson demonstrating electronic muscle stimulators at trade shows. He graduated from high school and attended college for a year. He is currently homeless. Plaintiff filed this action pursuant to Title II of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), claiming a period of disability and requesting supplemental security income.

An administrative law judge ("the ALJ") found that plaintiff was not disabled, in a decision issued on January 24, 2018. (Doc. 14, at 33.) Plaintiff next turned to the Social Security Administration's Appeals Council, which denied his request for review. As a result, the ALJ's

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

decision stands as the final decision of the Commissioner. Plaintiff, who is now pro se,[2] argues that the ALJ and the Appeals Council erred in several ways: 1) both failed to give sufficient weight to plaintiff's primary care providers from the Holy Family Medical Associates; 2) both failed to give sufficient weight to the diagnosis provided by Dr. Carla Lehr; 3) the Appeals Council wrongfully rejected the diagnosis of Dr. Kerin Schell as untimely; 4) the ALJ gave insufficient weight to plaintiff's physical disabilities; and 5) the ALJ disregarded the hearing testimony of vocational expert Karen Terrill. After a thorough review of the record, the court affirms the ALJ's ruling, as explained below.

In evaluating the extent of a claimant's disabilities, the ALJ must work through five steps to determine whether the claimant has a severe disability which prevents him from performing not only his previous job, but also prevents him from engaging in any substantial gainful work which is appropriate and available in our national economy. 20 C.F.R. § 416.920(a)(4); *Cross v. Apfel*, No. 98-4098-CM, 2000 WL 1861825, *2 (D. Kan. Nov. 22, 2000). In his decision, the ALJ determined that plaintiff had severe degenerative disc disease, obesity, chronic insomnia and bipolar affective disorder, all of which significantly limited his ability to perform basic work activities. However, none of the impairments matched the Social Security's definitions of conditions that are automatically disabling. The ALJ made a residual functional capacity assessment ("RFC") and concluded that plaintiff was capable of performing certain light unskilled work, such as shipping and receiving weigher and routing clerk. Consequently, the ALJ found that plaintiff was not disabled.

---

[2] Because Plaintiff proceeds pro se before this court, the court construes his pleadings liberally. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Travis v. Park City Mun. Corp., 565 F.3d 1252, 1254 (10th Cir. 2009). But, the court will not assume the role of advocate for Plaintiff. Garrett v. Selby Conner Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005).

To review the ALJ's decision, this court must check that the ALJ's factual findings are supported by substantial evidence in the record, and that the legal standards applied were correct. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019); *Martinez v. Comm'r, SSA*, 777 F. App'x 930, 932 (10th Cir. 2019); 42 U.S.C. § 405(g). The court's review is limited; it may not reweigh the evidence or replace the ALJ's judgment with its own. *Bellamy v. Massanari*, 29 F. App'x 567, 569 (10th Cir. 2002) (citing *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995)). While the court looks for substantial evidence, "the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Con. Ed. Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In the present case, plaintiff argues that the ALJ's decision is not supported by substantial evidence because he gave insufficient consideration and weight to plaintiff's medical evidence.

Plaintiff also argues that the Appeals Council wrongfully rejected the additional evidence plaintiff presented after the ALJ's ruling. The Appeals Council may only consider additional evidence if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(b). The Appeals Council refrained from reviewing plaintiff's additional evidence because it failed to meet these criteria. The Council's decision is a matter of law that is reviewed by this court de novo. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). If this court concurs that the additional evidence was properly rejected by the Appeals Council as not meeting these criteria, this evidence will not be considered by this court in its review of the ALJ's ruling. *Id.* at 1143. Nevertheless, for the sake of chronological clarity, the court will begin its analysis by examining plaintiff's complaints about the weight accorded his evidence by the ALJ.

### *Mental impairment*

The ALJ concluded that plaintiff's bipolar disorder, while severe, was not sufficiently limiting to be categorized as disabling under listing 12.04 ("Depressive, bipolar and related disorders"), specifically the Paragraph B criteria. *See* 20 C.F.R. § 416.920a; 20 C.F.R. Pt. 404, Subpt. P, app. 1, sec. 13; *Lynesha D. v. Berryhill*, C.A. No. 18-2339-JWL, 2019 WL 1453972, at *3 (D. Kan. Apr. 2, 2019) (explaining "Paragraph B" revised criteria for evaluating mental disorders). To satisfy the Paragraph B criteria, plaintiff must have one extreme limitation or two marked limitations in broad areas of functioning including: understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing himself. 20 C.F.R. Pt. 404, Subpt. P, app. 1, Part-A2. In arriving at his conclusion, the ALJ relied primarily on three sets of medical records. First, he reviewed a Social Security function report prepared and submitted by plaintiff.[3] (Doc. 14, at 253–62, ex. 9E.) At the time plaintiff filled out this report, he was living with his mother and helping out with cooking, housework and shopping. He reported that he could pay bills, handle checking and savings accounts, and leave the house alone for car trips. He also played board and video games and enjoyed sketching and reading. Although his desire to socialize outside the family had decreased in recent years, he reported socializing occasionally. Plaintiff checked the "no" box when asked if he needed reminders to take his medication or to take care of other personal needs. He noted that he could follow written instructions "exactly" and usually finished what he started, but got frustrated easily and had problems getting along with bosses and other authority figures, including police officers and politicians.

The ALJ observed that plaintiff reported more difficulties in concentration and persistence to his regular treatment provider, physician's assistant Carolyn Bland from Holy Family Medical

---

[3] The Administrative Record's table of contents indicates that the date of this report is January 1, 2016; however, the court cannot locate a date on the record.

Associates. (Id. at 375–402, ex. 9F.) He noted further that the Holy Family treatment records reflected a possible decrease in plaintiff's ability to adapt to stressors. Consequently, the ALJ determined that while plaintiff had no limitation in understanding, remembering or applying information and only a mild limitation in interacting with others, his limitations in the other Paragraph B criteria (concentrating, persisting or maintaining pace; and adapting or managing himself) were both moderate. In the absence of an extreme limitation, or two marked limitations, in any category, the ALJ concluded that plaintiff's mental impairment was not disabling.

Plaintiff now complains that the Holy Family treatment records were given no weight by the ALJ. However, it is apparent from the decision that the ALJ did consider the contemporaneous records maintained by Ms. Bland at each appointment. Moreover, these records support the ALJ's conclusions. (Id. at 375–402, ex. 9F.) Between March 2016 and February 2017, Ms. Bland saw plaintiff eight times, noting nothing remarkable under the Neurological and Psychiatric headings but insomnia (every visit); depression on one occasion, which manifested itself "as anger/frustration"; vertigo on two occasions; and refusal to consider treating with antidepressants at one visit. On most of the visits, Ms. Bland noted that plaintiff was "Negative for crying spells, depression, feelings of stress, anhedonia, recreational drug use, sadness or suicidal thoughts."

In contrast to these reports, Ms. Bland prepared a "Medical Source Statement – Mental" in August 2017, in connection with plaintiff's application for Social Security benefits. (Id. at 403–05, ex. 10F.) This statement reflects a considerably more dire assessment, as she has marked plaintiff "Extremely Limited" in ten of the twenty areas and "Markedly Limited" in another seven. The ALJ gave this statement little weight because it was "inconsistent with the record and not supported by any examinations or objective evidence," and moreover was inconsistent with plaintiff's own assessment of his abilities in his function report, as well as with Ms. Bland's own treatment notes. (Id. at 44.)

As a basis of comparison, the record also included results of a mental and physical examination of plaintiff conducted by internist Dr. James Henderson on October 14, 2015, at the request of the Social Security Administration. Dr. Henderson noted that plaintiff reported depression, insomnia and anger issues, but stated these conditions had improved as he had gotten older. (Id. at 322–23.) Dr. Henderson's report of plaintiff's mental status on the day of the exam is below:

> The patient lives with his mother and the patient drove to the evaluation today. The patient looks his stated age and is dressed appropriately. Memory appears intact. I find no gross evidence of delusion, hallucination or paranoia. Affect is normal. Simple arithmetic is intact. The patient is oriented times three. . . . The patient does not shop for food, cook or clean about the house. The patient relates well to me today. The patient is able to handle his own funds.

The court finds that the ALJ's evaluative process was conducted in accordance with the regulations for weighing medical opinions. *See* 20 C.F.R. § 404.1527(c). Moreover, his conclusions concerning the extent of the limitations posed by plaintiff's mental impairment are supported by sufficient evidence. *See Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (holding that an ALJ may decline to give controlling weight to the opinion of a treatment provider when it is inconsistent with other substantial evidence in the record).

The ALJ also assessed plaintiff's mental impairment in connection with Step Four to determine his residual functional capacity, which is a claimant's capability after accounting for his limitations. *See* 20 C.F.R. § 404.1545. At this step, the ALJ concluded that plaintiff was capable of performing unskilled work with frequent contact with colleagues and the public, as long as he was provided with customary workplace breaks. In addition to the previously-mentioned records, the ALJ also considered an evaluation done by psychologist Kerin Schell in February 2017; two record-reviews done by State Disability Determination Services employees in November 2015 and January 2016; and a third-party function report prepared by plaintiff's mother. As it seems that plaintiff does not object to the weight accorded these particular records, the court will not review their content.

### *Physical impairments*

The ALJ determined that plaintiff's obesity and degenerative disc disease were severe, but not disabling. As for plaintiff's obesity, the ALJ noted that no medical evidence specified symptoms or limitations resulting from his weight. Nonetheless, the ALJ acknowledged that obesity probably contributed to plaintiff's other physical complaints and consequently he considered it when assessing plaintiff's RFC. The ALJ noted that, in at least one evaluation, the plaintiff had a full range of motion, no problems walking, and could even squat and hop with little difficulty. He then concluded that plaintiff's chronic back pain might restrict his "postural maneuvers slightly" and cause some fatigue, although this condition was not limiting to the extent plaintiff alleged. (Doc. 14, at 42.) The ALJ concluded that plaintiff could perform light work, as long as there was a restriction against heavy lifting and a limitation on exposure to hazards "based on safety considerations associated with his alleged lower extremity symptoms." (Id. at 43.) The ALJ specified light work due to possible problems in plaintiff's concentration resulting from his chronic insomnia.

Plaintiff argues that his physical disabilities add to his stress and exacerbate his mental health issues. He argues further that the ALJ acted with "gross negligence" when he ignored "all the testing and diagnosis given by professional, state licensed, people by dismissing them as 'lay' persons...." Plaintiff's list of wrongfully-overlooked medical professionals includes Carolyn Bland, Carla Lehr, Kerin Schell, and Steven Ericksen. (Doc. 16, at 4.) Three of these are plaintiff's mental health providers, and, consequently, do not provide the most relevant assessment of plaintiff's physical impairments.

The court will focus instead on the weight given to the report of orthopedist Dr. Steven Ericksen. Plaintiff visited Dr. Ericksen in 2016 for treatment for back pain. On April 11, 2016, he

was diagnosed with "Congenital Spondylolysis L5-S1 (Q76 2),[4]" but "no significant lumbar spondylolysis." He was prescribed a course of physical therapy, along with a muscle relaxer. At a follow-up appointment on June 20, 2016, Ericksen diagnosed plaintiff with "Lumbar Spondylolysis L5-S1(M43 06)," and encouraged him to continue with the physical therapy exercises at home. This diagnosis is consistent with the findings of internist Dr. James Henderson who examined plaintiff on October 14, 2015, at the request of the Social Security Agency. Dr. Henderson concluded that plaintiff had "lumbar arthralgias," "pain in the lumbar area with full range of motion," and exhibited "mild difficulty with orthopedic maneuvers." He also observed that plaintiff "had no difficulty getting on and off the examining table"; "no difficulty with heel and toe walking"; "mild difficulty squatting and arising from a sitting position"; and "mild difficulty hopping." (Doc. 14, at 322.)

The ALJ's conclusion that plaintiff was not disabled is consistent with the opinions proffered by these two medical professionals. The ALJ's conclusion that plaintiff is capable of light work that does not require heavy lifting, that permits him to move from sitting to standing from time to time, and to have an occasional break, is sufficiently supported by the record.

### *Vocational Expert*

Plaintiff also argues that the ALJ erred when he disregarded comments made by the impartial vocational expert Karen Terrill at the hearing on September 27, 2017. Ms. Terrill testified about the existence of jobs available in the United States for which plaintiff was qualified. At the close of her testimony, the ALJ asked Ms. Terrill several hypothetical questions concerning persons with varying levels of ability, such as the ability to climb stairs, or execute instructions. Plaintiff's attorney then posed a hypothetical that plaintiff presumably believes more closely reflects his limitations. This

---

[4] Plaintiff refers to these documents as Exhibit N to his complaint. (Doc. 1, at 97.) However, the corresponding pages in the record are not identically collated, although most of Dr. Ericksen's record show up as Exhibit 15F. (Doc. 14, at 458–61.)

hypothetical started with the same limitations included in the ALJ's examples but added the inability to respond appropriately to criticism from a supervisor, including walking away from the supervisor. Ms. Terrill responded that a person with this hypothetical limitation would not be able to successfully maintain employment. (Id. at 80–81.) Plaintiff argues that, as in his lawyer's hypothetical example, his mental disabilities have always prevented him from being able to maintain employment.

There is no reason compelling the ALJ to consider this answer to a hypothetical based on limitations that the ALJ concluded were not supported by the medical evidence. *Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016); *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) ("The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record."). Consequently, it was proper and reasonable for the ALJ to disregard this hypothetical question and the response elicited.

### *Material provided to the Appeals Council*

As noted previously, plaintiff appealed the ALJ's ruling to the Appeals Council. The Council advised plaintiff, through his attorney, that he could submit additional documentation:

> You may send us a statement about the facts and the law in this case or additional evidence. We consider additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision. You must also show there is a reasonable probability that the additional evidence would change the outcome of the decision. You must show good cause for why you missed informing us about or submitting it earlier.

(Doc. 14, at 18.) *See* 20 C.F.R. § 404.989(a)(1). Plaintiff responded by sending a packet of documents that, for various reasons, the Council refused to consider, notifying plaintiff that it denied his request for a review of the decision. Plaintiff objects to the Council's rejection of some of his additional evidence.

First, plaintiff claims he sent the Medical Source Statement-Mental prepared by Carolyn Bland, and that this was disregarded by the Council. This is the two-page Social Security form that was

reviewed by the ALJ as Exhibit 10F. As explained earlier, the ALJ gave the statement little weight because it was inconsistent with the record. From the court's review of the administrative record, it does not appear that this document was actually provided to the Appeals Council, as plaintiff believes. (Doc. 14, at 8–32.) However, had the Council received and reviewed this statement, its response would have been that Exhibit 10F was not new evidence; it had already been reviewed by the ALJ. Consequently, it would have been proper for the Appeals Council to reject this evidence.

Plaintiff submitted a Neuropsychological Evaluation Report prepared by psychologist Carla Lehr on April 15, 2016. (Id. at 52–56.) Plaintiff states that no weight was given to this report by either the ALJ or the Appeals Council. It is not clear to the court that this report was included in the documents available to the ALJ. It is not mentioned in his decision or listed with the exhibits. (Id. at 47.) Although the ALJ does not appear to have reviewed this report, the Appeals Council refused to consider it because it did "not show a reasonable probability that it would change the outcome of the decision." (Id. at 2.)

This two-page report opens with a paragraph describing the remarks made by plaintiff and his mother about why they were there. This paragraph concludes:

> Eric and his mother arrived on time for his scheduled appointments. Eric was alert, oriented X4, and appropriately dressed and groomed. Speech was fairly sparse but with normal rate and prosody. He was pleasant and cooperative during the initial interview. There was no indication of a thought disorder, or other loose associations.

(Id. at 52.) The second section describes plaintiff as irritable, demanding, emotionally immature, and grouchy, but not socially withdrawn or anxious in social settings. The conclusion: "Testing indicates the presence of a severe depressive disorder with Schizoid and Narcissistic features." Although the Council does not elaborate on its explanation for rejecting this evidence, these results appear to the court to be consistent with the other evidence reviewed by the ALJ, and consistent with the ALJ's conclusions that plaintiff has a severe mental impairment but is nonetheless capable of performing

-10-

some light unskilled work. Consequently, the Appeal Council's determination that this report would not change the outcome of the ALJ's decision is reasonable.

Plaintiff also submitted a letter addressed to his lawyer from psychologist Kerin Schell, dated March 13, 2018. Because of the date of the letter, the Appeals Council rejected it as not addressing the proper time period, and therefore not relevant to a determination of whether plaintiff was disabled on or prior to the ALJ's decision on January 24, 2018. This was an over-simplification on the part of the Appeals Council. It is clear from the letter that Dr. Schell is summarizing a therapeutic relationship with plaintiff that commenced in 2003. The letter addresses plaintiff's grandmother, his infancy and childhood, relationships with his mother and brother, and other issues which are connected but not pin-pointedly relevant to the specific and discrete task before the Appeals Council. Dr. Schell offers several diagnoses: post-traumatic stress, bipolar disorder, moderate psychomotor agitation, and severe depression. He notes plaintiff's poor concentration and high self-esteem, and comments that he is "unable to maintain a job for more than a few months due to his inappropriate social behavior." (Id. at 9–11.) Unfortunately, the letter, with its anecdotal style and no reference to any objective testing or evaluation, is not the kind of information that the ALJ can rely upon in making an assessment. The regulations require that a reliable medical opinion be, *inter alia*, "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2). Therefore, the letter was properly rejected by the Appeals Council as unlikely to change the outcome of the ALJ's decision. Dr. Schell attaches to his letter a page of "Diagnostic Impressions," also dated March 13, 2018. As the Council correctly observed, these diagnoses, on their face, are outside of the time period evaluated by the ALJ.

Plaintiff objects to the Appeals Council's disregard of the letter because he states he submitted it within the 25-day period specified by the Council. Plaintiff misunderstands the Council's rationale

for denial. The time frame that concerns the Council is not the 25-day period for additional evidence; plaintiff is correct that he supplied the Council with the additional evidence in a timely manner. The Council is concerned with the time frame for evidence of disability. To qualify for disability benefits, plaintiff must be disabled between January 2014 and January 2018, when the ALJ issued his ruling. As the Appeals Council advises, if plaintiff has medical evidence pertinent to a finding of disability subsequent to the ALJ's decision, that material must be part of a new application for benefits.

Finally, plaintiff submitted to the Appeals Council a letter "To whom it concerns," prepared by his orthopedist, Dr. Ericksen. (Doc. 14, at 28.) The Council refused to review this letter because it was dated February 26, 2018, after the issuance of the ALJ's decision. However, the letter is only a recap of Dr. Ericksen's notes from his treatment of plaintiff between April and June of 2016. Its time frame is relevant, but its content is not new. Dr. Ericksen writes that, in April 2016, based on a CT scan, x-rays and an exam, "Eric was diagnosed with L5-S1 spondylolysis. He was relatively stable when I last saw him back in June 2016, but it was expected that he may have episodes of exacerbation and remission of his pain." Again, this is consistent with the material considered by the ALJ, and consistent with the decision he reached. It is not new evidence and was properly rejected by the Appeals Council.

### *Conclusion*

The court finds that the ALJ's assessments of plaintiff's mental and physical impairments are supported by substantial evidence in the record. In addition, the Appeals Council acted properly in rejecting plaintiff's additional evidence because the evidence failed to meet the criteria for material that may be reviewed by the Council.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner of Social Security is affirmed, and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g).

Dated February 21, 2020, at Kansas City, Kansas.

s:/ John W. Lungstrum  
**John W. Lungstrum**  
**United States District Judge**